UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNION BETHEL AFRICAN METHODIST EPISCOPAL CHURCH | CIVIL ACTION |
| VERSUS | No. 23-5455 |
| INDEPENDENT SPECIALTY INSURANCE COMPANY ET AL. | SECTION I |

### ORDER & REASONS

Before the Court is a motion[1] to compel arbitration and to stay or, alternatively, dismiss the above-captioned matter. The motion was filed by defendants Independent Specialty Insurance Company ("ISIC") and Underwriters at Lloyd's, London ("Lloyd's") (collectively, "defendants"). Plaintiff Union Bethel African Methodist Episcopal Church ("plaintiff") opposes[2] the motion. Defendants filed a reply.[3] For the reasons set forth below, the Court grants the motion to compel arbitration.

### I.  FACTUAL BACKGROUND

Plaintiff is a non-profit religious corporation located in Orleans Parish, Louisiana, whose properties were allegedly damaged during Hurricane Ida.[4] Plaintiff alleges that, at the time of the storm, plaintiff's property was covered by an insurance policy issued by defendants (the "policy").[5] According to plaintiff, defendants failed to

---

[1] R. Doc. No. 16.
[2] R. Doc. No. 17.
[3] R. Doc. No. 21.
[4] R. Doc. No. 1-1, ¶¶ 1, 8.
[5] *Id.* ¶ 7.

make adequate payments pursuant to that policy.[6] Consequently, plaintiff asserts causes of action for breach of contract and breach of the duty of good faith and fair dealing.[7]

Defendants removed this lawsuit based on federal question jurisdiction because the policy's arbitration clause "falls under the Convention on the Recognition and Enforcement of Arbitral Awards[.]"[8] The arbitration clause in the policy provides that "all matters in dispute between [the parties] in relation to this insurance, including this policy's formation and validity, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal[.]"[9]

Based on this provision, defendants now move to compel arbitration and to stay these proceedings pending arbitration.[10] Although plaintiff concedes that arbitration with Lloyd's is appropriate, plaintiff argues that it should not be compelled to arbitrate its claims against ISIC because ISIC is a domestic insurer and plaintiff has separate contracts with ISIC and Lloyd's.[11] Plaintiff also contends that ISIC is not entitled to compel arbitration pursuant to Louisiana Revised Statute § 22:868.[12] Plaintiff further asserts that "there was no valid agreement to arbitrate" and that the arbitration clause is procedurally unconscionable.[13] Alternatively, plaintiff requests

---

[6] *Id.* ¶ 61.
[7] *See id.* ¶¶ 45–66.
[8] R. Doc. No. 1, at 2.
[9] R. Doc. No. 1-2, at 39.
[10] R. Doc. No. 16, at 1.
[11] R. Doc. No. 17, at 4–13.
[12] *Id.* at 15–18.
[13] *Id.* at 21–23.

that the Court issue a ruling that the seat of the arbitration should be in Louisiana and that the arbitral tribunal should apply Louisiana law.[14]

## II. LAW AND ANALYSIS

### a. Validity and Enforceability of the Arbitration Clause

Defendants assert that the arbitration provision contained in the policy falls under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention" or the "Convention"), as implemented by 9 U.S.C. § 201 *et seq.* The purpose of the New York Convention is "to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974). Chapter 2 of the Federal Arbitration Act ("FAA") "provides for the New York Convention's enforcement, grants federal courts jurisdiction over actions governed by the Convention, and empowers the courts to compel arbitration." *Manheim v. Indep. Specialty Ins. Co.*, No. 23-4343, 2023 WL 8370369, at *1 (E.D. La. Dec. 4, 2023) (Vance, J.) (citing 9 U.S.C. §§ 201, 203, 206). There is a "strong presumption" in favor of enforcement of arbitration provisions. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985).

"In determining whether the Convention requires compelling arbitration in a given case, courts conduct only a very limited inquiry." *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 339 (5th Cir. 2004) (citing *Francisco v. STOLT*

---

[14] *Id.* at 18–21.

3

*ACHIEVEMENT MT*, 293 F.3d 270, 273 (5th Cir. 2002)). "[A] court should compel arbitration if (1) there is a written agreement to arbitrate the matter; (2) the agreement provides for arbitration in a Convention signatory nation; '(3) the agreement arises out of a commercial legal relationship; and (4) a party to the agreement is not an American citizen.'" *Freudensprung*, 379 F.3d at 339 (quoting *Francisco*, 293 F.3d at 273). If these requirements are met, the Convention requires the district court to order arbitration unless it finds that the agreement is "null and void, inoperative or incapable of being performed." *Id.* (quotation omitted).

Defendants assert that all requirements are met in this case because (1) the policy's arbitration clause qualifies as a written agreement to arbitrate;[15] (2) the policy provides for arbitration in a signatory nation—the United States—because it provides for arbitration in Tennessee;[16] (3) the arbitration agreement arises out of a commercial legal relationship, namely, the insurance policy;[17] and (4) Lloyd's is not a citizen of the United States because Lloyd's sole member, RenaissanceRe Corporate Capital (UK) Limited, is a citizen of the United Kingdom.[18]

Plaintiff concedes that arbitration with Lloyd's is appropriate pursuant to this inquiry.[19] However, plaintiff argues that the fourth requirement is not met as to ISIC, which is a citizen of the United States. According to plaintiff, plaintiff entered into

---

[15] R. Doc. No. 16-1, at 8.
[16] *Id.*
[17] *Id.*
[18] *Id.* at 9.
[19] R. Doc. No. 17, at 3.

4

two separate contracts—one with Lloyd's and one with ISIC.[20] Plaintiff therefore urges the Court to consider its purportedly separate ISIC policy separately for purposes of determining whether the New York Convention applies.[21] Because the Convention requires the presence of a foreign party to the agreement and ISIC is a citizen of the United States, plaintiff argues that the Convention does not apply to the contract between plaintiff and ISIC.[22]

The insurance policy lists each carrier—ISIC and Lloyd's—separately, and it assigns a different "Carrier Policy ID" number to plaintiff's contract with ISIC and plaintiff's contract with Lloyd's.[23] Further, the policy provides:

> This contract shall be constructed as a separate contract between the Named Insured and each of the Insurers. The evidence of coverage consists of separate sections of a composite insurance for all Underwriters at Lloyd's combined and separate policies issued by the Insurer(s), all identified above. This evidence of coverage does not constitute in any manner or form a joint certificate of coverage by Underwriters at Lloyd's with any other Insurer(s).[24]

Additionally, the policy's several liability clause states that, "[a]lthough reference is made at various points in this clause to 'this contract' in the singular, where the circumstances so require this should be read as a reference to contracts in the plural."[25] Other sections of this Court considering similar policies have concluded that their plain language requires them to be read as encompassing separate contracts. *See, e.g.*, *Manheim*, 2023 WL 8370369, at *3; *Southland Square Apartments v. Certain*

---

[20] *Id.* at 6–9.
[21] *Id.* at 7.
[22] *Id.* at 9.
[23] R. Doc. No. 1-2, at 2.
[24] *Id.* at 66.
[25] *Id.* at 63.

*Underwriters at Lloyd's, London*, No. 23-2329, 2023 WL 6458844, at *3 (E.D. La. Oct. 4, 2023) (Barbier, J.). Here too, the plain language of the policy suggests that it must be read not "as one contract but as several bound together for convenience and by commonality." *Id.* (quoting *Southland Square Apartments, LLC*, 2023 WL 6458844, at *3).

At first glance, then, it might appear that only the arbitration clause contained in the separate insurance policy between plaintiff and the foreign defendant-insurer—Lloyd's—is enforceable under the New York Convention. *See id.* "This is because the Convention applies to preempt Louisiana law only when a party to the arbitration agreement is not an American citizen." *Id.* (citing *Freudensprung*, 379 F.3d at 339). On this basis, plaintiff argues that the arbitration clause in the contract with ISIC is unenforceable pursuant to Louisiana Revised Statute § 22:868(A), which prohibits the use of arbitration clauses in insurance contracts. *See* La. Rev. Stat. Ann. § 22:868(A) ("No insurance contract delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state . . . shall contain any condition, stipulation, or agreement . . . [r]equiring it to be construed according to the laws of any other state or country . . . [or] [d]epriving the courts of this state of the jurisdiction or venue of action against the insurer.").

However, in reply, defendants argue that § 868(A) does not prohibit the arbitration clause at issue because this clause is contained in a surplus lines policy, which is exempted from the statutory prohibition against arbitration clauses through

§ 868(D).[26] Section 868(D) provides that "[t]he provisions of Subsection A . . . shall not prohibit a forum or venue selection clause in a policy form that is not subject to approval by the Department of Insurance." "Surplus lines insurers are exempted under the Insurance Code from filing or seeking approval of their forms pertaining to property insurance pursuant to La. Rev. Stat. Ann. § 22:446(A)[.]" *Burk Holding Co. v. Mt. Hawley Ins. Co.*, No. 22-3503, 2023 WL 183898, at *5 (E.D. La. Jan. 13, 2023) (Africk, J.) (order on motion to transfer venue). "Thus, § 868(A) does not render forum-selection clauses in surplus lines policies unenforceable." *Id.*

Although it is clear that § 868(A) does not prohibit *forum-selection clauses* in surplus lines policies, the Court notes that "[t]he Louisiana Supreme Court has not ruled specifically on whether [§] 868(A) prohibits *arbitration clauses* in surplus lines insurance policies, and there is a split in how Federal district courts sitting in Louisiana have decided this issue." *Heart 2 Heart Fam. Worship Ctr. v. Indep. Specialty Ins. Co.*, No. 23-cv-00471, 2023 WL 8494536, at *1 (E.D. La. Nov. 1, 2023) (Guidry, J.) (emphasis added) (collecting cases). However, as other sections of this Court have explained—including in cases involving ISIC—the U.S. Supreme Court has repeatedly recognized that an arbitration agreement is a specialized kind of forum-selection clause. *See id.* (citing *Bourgeois v. Indep. Specialty Ins. Co.*, No. 22-1256, 2023 WL 6644171, at *2 (E.D. La. Oct. 12, 2023) (Lemmon, J.)). Further, "Louisiana law recognizes arbitration clauses as a type of forum selection clause." *Id.* (citation omitted). Therefore, "Louisiana law does not prohibit the enforcement of the

---

[26] R. Doc. No. 21, at 2–7.

[policy's] arbitration clause[.]" *Id.* at *2; *see also Parish of St. Charles v. HDI Global Specialty SE*, No. 22-3404, 2023 WL 1419937, at *5 (E.D. La. Jan. 31, 2023) (Ashe, J.) (explaining that § 868(A)'s prohibition on arbitration clauses does not apply to surplus lines insurance policies); *Certain Underwriters at Lloyd's, London v. Belmont Commons L.L.C.*, No. 22-cv-3876, 2023 WL 105337, at *3 (E.D. La. Jan. 4, 2023) (Fallon, J.) (same).

Plaintiff's argument against compelling arbitration also fails for a second reason. As another section of this Court recently held in interpreting a similar contract, the doctrine of equitable estoppel prevents plaintiff from objecting to arbitration with a domestic defendant-insurer—here, ISIC—when the claims against all defendants, foreign and domestic, are inextricably intertwined. *See Manheim*, 2023 WL 8370369, at *3 (citing *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 526 (5th Cir. 2000)); *see also Belmont Commons L.L.C.*, 2023 WL 105337, at *3 (explaining that § 868(A) "pose[s] no bar to the application of *Grigson* estoppel" in a case involving a surplus lines insurer).

"This form of estoppel applies when a plaintiff has alleged 'substantially interdependent and concerted misconduct' on the part of both the domestic defendant and the foreign insurer." *Manheim*, 2023 WL 8370369, at *3 (quoting *Grigson*, 210 F.3d at 527). The doctrine is motivated by a desire to avoid arbitrating claims against one defendant while litigating claims against another, which may "yield inconsistent results, waste time and resources, and thwart federal policy favoring arbitration." *Id.* (quoting *Holts v. TNT Cable Contractors, Inc.*, No. 19-13546, 2020 WL 1046337, at *4

8

(E.D. La. Mar. 4, 2020) (Feldman, J.)). "[W]hether to utilize equitable estoppel . . . is within the district court's discretion." *Grigson*, 210 F.3d at 528.

Upon review of plaintiff's complaint, the Court finds that plaintiff has alleged substantially interdependent and concerted misconduct by Lloyd's and ISIC. As in *Manheim*, plaintiff's state-court petition refers collectively to Lloyd's and ISIC as "Defendants" and it "makes allegations against both defendants without differentiation."[27] 2023 WL 8370369, at *4. For example, the petition alleges that "Defendants" provided the insurance policy, dispatched an adjuster to inspect the properties, issued payment based on the adjustor's estimate.[28] Plaintiff also alleges that defendants collectively "fail[ed] to provide [plaintiff] adequate payment in connection with its damages" and that defendants collectively acted in bad faith in various ways.[29]

Plaintiff argues that the Court should not compel arbitration on this basis because "disputes regarding damages will not be identical, as each insurer is severally liable[.]"[30] However, plaintiff cites no authority for the proposition that there is no "substantially interdependent and concerted misconduct" simply because defendants are severally liable.

Accordingly, "[b]y failing to differentiate the wrongdoing of each defendant, plaintiff[] allege[d] interdependent claims." *Manheim*, 2023 WL 8370369, at *4. "As

---

[27] *See generally* R. Doc. No. 1-1.
[28] *Id.* ¶¶ 7, 10, 12–13,
[29] *Id.* ¶¶ 56–66.
[30] R. Doc. No. 17, at 10.

9

such, fairness—the 'linchpin' of equitable estoppel—militates against arbitrating [plaintiff's] claims against [Lloyd's] while litigating [its] identical claims against [ISIC]." *Id.* (quoting *Holts*, 2020 WL 1046337, at *4) (cleaned up). "The Court must therefore compel arbitration as to both the foreign defendant, [Lloyd's], and the domestic defendant, ISIC." *Id.*; *see also Academy of Sacred Heart of New Orleans v. Certain Underwriters at Lloyd's London*, 651 F. Supp. 3d 822 (E.D. La. 2023) (Africk, J.) (granting motion to compel arbitration and stay proceedings based on equitable estoppel in similar circumstances).

### b. Arbitral Seat and Applicable Law

Plaintiff alternatively argues that, if the Court finds plaintiff must arbitrate its claims against both insurers, the arbitration should take place in Louisiana subject to Louisiana law.[31] With respect to the arbitral seat, plaintiff first contends that the choice of Tennessee as the seat of arbitration is "inapplicable and against Louisiana public policy" pursuant to Louisiana Revised Statute § 22:868(A).[32] However, as previously discussed, that statute does not prohibit arbitration clauses in surplus lines policies. Further, plaintiff cites no caselaw supporting the proposition that requiring plaintiff to proceed to arbitration in Tennessee would be "exceedingly burdensome" or "procedurally unconscionable" in light of plaintiff's agreement to

---

[31] R. Doc. No. 17, at 18.
[32] *Id.*

10

arbitrate in Tennessee and this Court's holding regarding § 868.[33] The Court therefore denies plaintiff's request that the arbitration take place in Louisiana.

Although plaintiff contends that the arbitration clause requires "Tennessee law to apply[,]"[34] the Court was unable to locate any such choice of law provision in the arbitration clause. Regardless, the Court will not determine the law to be applied at the arbitration. As explained, the Court's inquiry in determining whether the Convention requires compelling arbitration is "very limited." *Freudensprung*, 379 F.3d at 339. The Court has resolved the question before it by finding that the parties' arbitration agreement was validly formed and enforceable under the Convention. It is thus unnecessary for the Court to decide which state's law should apply to the arbitration. *See Manheim*, 2023 WL 8370369, at *4; *see also Maxwell Heirsch, Inc. v. Velocity Risk Underwriters, LLC*, No. 23-495, 2023 WL 4763104, at *4 (E.D. La. July 26, 2023) (Ashe, J.) (denying plaintiff's request that the Court issue a ruling that

---

[33] *Id.* at 18, 22. For instance, plaintiff cites a case finding that the public interest factors that must be considered as part of a court's *forum non conveniens* analysis weighed in favor of maintaining the litigation in Louisiana. *Id.* at 20 (citing *Avaid Hotel, LLC v. Allied World Assurance Co. (US) Inc.*, No. 21-1973, 2022 WL 3636341, at *5 (W.D. La. Aug. 23, 2022)). However, that case did not involve an arbitration clause, and its footnote explaining that surplus lines policies are not carved out by § 868(D) relies on an order that was subsequently vacated pursuant to a writ of mandamus issued by the U.S. Court of Appeals for the Fifth Circuit. *See Avaid Hotel, LLC*, 2023 WL 3636341, at *3 n.2 (citing *Ram Krishana Inc. v. MT Hawley Ins. Co.*, No. 2:21-CV-03031, 2022 WL 266713, at *3 (W.D. La. Jan. 27, 2022), *vacated*, 2022 WL 543577).
[34] *Id.* at 18.

11

Louisiana law governs the arbitration). The Court accordingly denies plaintiff's choice-of-law request.

### c. Stay Pending Arbitration

Pursuant to 9 U.S.C. § 3, when an issue subject to an arbitration clause is raised in a federal court, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." *See also* 9 U.S.C. § 208 (providing that FAA provisions apply to actions governed by the Convention); *1010 Common, LLC v. Certain Underwriters at Lloyd's, London*, No. 20-2326, 2020 WL 7342752, at *12 (E.D. La. Dec. 14, 2020) (Lemelle, J.) (noting that "because the Convention Act incorporates the FAA," parties whose agreements fall under the Convention seek authority for stays pursuant to 9 U.S.C. § 3). Defendants have requested that this matter be stayed.[35] Because the Court has determined that arbitration is mandated in this case, it will stay and administratively close this litigation.

### III. CONCLUSION

Accordingly,

**IT IS ORDERED** that defendants' motion to compel arbitration is **GRANTED.**

**IT IS FURTHER ORDERED** that this matter is **STAYED AND ADMINISTRATIVELY CLOSED** pending any further order of this Court.

---

[35] Although defendants alternatively request dismissal of the proceedings, defendants have not explained why dismissal is warranted, and the Court declines to exercise its discretion to dismiss this matter. *See Manheim*, 2023 WL 8370369, at *5.

New Orleans, Louisiana, December 19, 2023.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**